# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DORI BECKWITH and SCOTT BECKWITH,

    Plaintiff(s),

v.

ROBERT POOL, ESQ., et al.,

    Defendant(s).

2:13-CV-125 JCM (NJK)

# ORDER

Presently before the court is defendants', Jutta Chambers and City of Henderson, motion to dismiss. (Doc. # 8). Plaintiffs, Dori and Scott Beckwith, filed a response in opposition (doc. # 13), and defendants filed a reply (doc. # 16).

**I.    Background**

On or about March 9, 2010, Dori Beckwith ("Ms. Beckwith") retained defendant Robert Pool, an attorney, to represent her in a traffic citation charge issued by the City of Henderson. (Doc. # 1, Exh. A, compl. at ¶ 12). On or about March 18, 2010, the district attorney's office offered to negotiate with Ms. Beckwith in the traffic charge(s). (*Id.* at ¶ 13). Defendant Pool allegedly informed Ms. Beckwith not to act on the offered negotiation until hearing back from him. (Doc. # 13).

Defendant Pool allegedly never acted or followed through with the offered negotiation. (*See id.* at ¶¶ 13-18). On or about November 24, 2010, Ms. Beckwith's traffic citation went into warrant

**James C. Mahan**
**U.S. District Judge**

1  status. (*Id.* at ¶ 14). On or about January 7, 2011, Ms. Beckwith was pulled over for a separate
2  driving infraction and then arrested for her traffic citation in warrant status. (*Id.* at ¶ 15). She was
3  transported to the City of Henderson Detention Center and in-processed at that facility. (*See id.* at
4  ¶ 16). Ms. Beckwith allegedly spent about twelve hours in jail, which caused her to miss her father-
5  in-law's funeral. (*Id.* at 18).

6  Based on the foregoing facts, Ms. Beckwith, along with her husband Scott ("Mr. Beckwith")
7  filed the instant lawsuit. They allege causes of action against attorney Robert Pool, his firm, former
8  Chief of Henderson Police Jutta Chambers, and the City of Henderson. Plaintiffs' first three causes
9  of action (negligence/legal malpractice, breach of contract, and breach of fiduciary duty) are alleged
10 against defendants Pool and Robert Pool, P.C., only.

11 The final eight causes of action are for all of the following: (1) 42 U.S.C. § 1983 for
12 violations of the Eighth and Fourteenth Amendments of the United States Constitution; (2) *Monell*
13 claims/municipal liability pursuant to 42 U.S.C. § 1983; (3) supervisory liability pursuant to § 1983;
14 (4) negligence; (5) negligent hiring, retention, training, and supervision; (6) intentional infliction of
15 emotional distress ("IIED"); (7) false arrest and false imprisonment; and, (8) respondeat superior.
16 These final eight claims are alleged against defendants Jutta Chambers and the City of Henderson
17 (collectively "city defendants").

18 They city defendants brought the instant motion to dismiss the latter eight claims. The
19 motions and this order have no effect on the claims against defendant Pool and his law firm.

20 **II.     Legal Standard**

21 A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can
22 be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain
23 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*
24 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual
25 allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements
26 of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual
27 allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus,
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id*. (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

**III.  Discussion**

The court will address each of the eight causes of action against the city defendants in turn.

A.     *Eighth and Fourteenth Amendment Violations Pursuant to 42 U.S.C. § 1983*

Ms. Beckwith alleges that the city defendants violated her Eighth and Fourteenth Amendment rights because they failed to properly classify her, set bail in a traffic violation, properly identify her,

and lost her within the jail system. (Compl. at ¶ 37). Plaintiff further alleges that the city defendants improperly booked her and mistakenly identified her as another woman.

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

"Eighth Amendment scrutiny is appropriate only after the State has secured a formal adjudication of guilt." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 239 (1983); *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977) ("[T]he State does not acquire the power to punish which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Based on the facts alleged in the complaint, Ms. Beckwith was a pretrial detainee at the time she was in jail. Therefore, her § 1983 claims for Eighth Amendment violations are dismissed.

"Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Ingraham*, 430 U.S. at 671-72 n. 40 ("Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.").

"[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights . . . ." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). "The Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). "Because incapacitated criminal defendants have not been convicted of any crime, they have an interest in freedom from incarceration." *Id.* "Whether the substantive due process rights of incapacitated

criminal defendants have been violated must be determined by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the state." *Id.*

The court finds that Ms. Beckwith has stated a claim for a Fourteenth Amendment violation pursuant to § 1983. Her complaint alleges that she was improperly booked, misidentified as another woman, and no bail was set. Plaintiff alleges this caused her to remain in jail for twelve hours for a traffic violation and that she missed the funeral of her father-in-law. At this early stage in the proceedings, plaintiff has properly stated a claim against the City of Henderson. However, the Fourteenth Amendment claim against Chief Chambers is dismissed without prejudice.

  B.  *Monell Claims/Municipal Liability*

"Municipalities" are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation." *Long*, 442 F.3d at 1185 (9th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). "[T]he municipality itself must cause the constitutional deprivation and [ ] a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

In order to state a *Monell* claim against a municipality for "deliberate inaction," the plaintiff must state: "(1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005) (quoting *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004)[1]; *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) ("To establish liability, a plaintiff must establish that he was deprived of a constitutional right and

---

[1] The Ninth Circuit has also established a different formulation of *Monell* liability. "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or, (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). Whatever differences may exist between these two formulations of *Monell* liability have no effect on the outcome of this motion to dismiss.

James C. Mahan
U.S. District Judge

that the city had a policy, practice, or custom which amounted to deliberate indifference to the constitutional right and was the moving force behind the constitutional violation.")

Ms. Beckwith has sufficiently stated a claim in her complaint. This court has already found that Ms. Beckwith has properly alleged a Fourteenth Amendment violation pursuant to § 1983. Additionally, Ms. Beckwith has alleged all of the following about the Henderson Police Department and/or its policy-making officials: (1) a policy of tolerating the failure to correctly ascertain the identity of citizens in its custody; (2) a policy tolerating and allowing the false imprisonment of citizens; (3) a policy that failed to use appropriate and generally accepted law enforcement procedures in identifying and classifying citizens; (4) a policy that denied citizens their due process and other constitutional rights; (5) a policy that allowed, tolerated, and/or encouraged a "code of silence" among law enforcement officers and policy department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and, (6) a policy that tolerated inadequate, deficient, and improper procedures for ascertaining the identity of citizens.

Ms. Beckwith has sufficiently stated each of the elements of a *Monell* claim–she has alleged that her Fourteenth Amendment rights were violated by the deliberate inaction of the City of Henderson's policies that improperly identified and kept citizens jailed and that those policies were the moving force behind the constitutional violations. At this early stage in the litigation, Ms. Beckwith has stated a claim sufficient to survive a motion to dismiss.

C.  § 1983 Claim for Supervisor Liability

"[I]n a Section 1983 action, vicarious liability may not be imposed on a state or municipal official for acts of lower officials in the absence of a state law imposing such liability." *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Furthermore, an official cannot be liable for deliberate indifference unless he or she knows of "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Simmons v. Navajo Cnty., Arizona*, 609 F.3d 1011, 1018 (9th Cir. 2010).

. . .

James C. Mahan
U.S. District Judge

- 6 -

Ms. Beckwith does not state a claim for supervisor liability against Chief Chambers. Ms. Beckwith, neither in the compliant nor in the response to the motion to dismiss, has cited any state law that imposes liability on municipal officials for the acts of lower officials. Ms. Beckwith has not alleged a single specific fact against Chief Chambers. The complaint contains no specific facts that allege that Chief Chambers was either deliberately indifferent or knew of the policies that allegedly caused harm to Ms. Beckwith. The cause of action for against Chief Chambers for supervisory liability is dismissed without prejudice.

      D.     *Negligence*

To state a claim for negligence a plaintiff must allege that: (1) defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and, (4) the plaintiff suffered damages. *Scialabba v. Brandise Constr. Co., Inc.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (Nev. 1996). Whether a defendant owes plaintiff a duty of care is a question of law. *Id.* at 969.

Ms. Beckwith alleges that the city defendants breached their duty to correctly identify plaintiff. (Compl. at ¶ 53). The court finds that police departments have a duty to make reasonable attempts to correctly identify any pretrial detainees. The court finds that Ms. Beckwith has sufficiently alleged the element of duty as to the City of Henderson.

Breach of duty and proximate cause are normally factual inquiries for a jury. However, at this stage, plaintiff has properly pleaded the elements of negligence against the City of Henderson. Ms. Beckwith has not sufficiently pleaded a negligence claim against Chief Chambers. The negligence cause of action is dismissed as against Chief Chambers and remains as to the City of Henderson.

      E.     *Negligent Hiring, Retention, Training, and Supervision*

NRS 41.032(2) states in relevant part that no tort shall be brought:

> Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

James C. Mahan
U.S. District Judge

- 7 -

1  This is known as the discretionary function exception. The Nevada Supreme Court has adopted the same test as the federal test for the discretionary function exception. *Martinez v. Maruszczak*, 123 Nev. 433, 446-47, 168 P.3d 720, 729 (Nev. 2007). To fall within the scope of discretionary-act immunity, an employee's decision "must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* "[D]ecisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity . . . ." *Id.*

Nevada looks to federal decisional law on Federal Tort Claims Act for guidance on the type of conduct protected by the discretionary function exception. *Id.* at 727-29. The Ninth Circuit and other federal circuits have held "that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases).

Additionally, a court in this district has held that, under Nevada law, the discretionary function exception barred negligent hiring and supervision claims. *Neal-Lomax v. Las Vegas Metro. Police Dep't.*, 574 F.Supp.2d 1170, 1192 (D. Nev. 2008) ("Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds training and supervision are acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim.").

Ms. Beckwith has alleged that the city defendants negligently hired, trained, and supervised certain police officers that allegedly causes her to remain in jail for up to twelve hours. However, the discretionary function exception bars these claims. The decision of which police officers to hire, and how to train and supervise them, are an integral party of governmental policy-making or planning. The cause of action for negligent hiring, retention, training and supervision is dismissed.

F.   IIED

The elements of an IIED cause of action are: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) plaintiff suffered severe or extreme emotional distress; and, (3) actual or proximate causation. *Star v. Rabello*, 97 Nev. 124,

1   125, 625 P.2d 90, 91-92 (Nev. 1981).

2   Ms. Beckwith has properly alleged the first element against the city of Henderson.  Ms. Beckwith alleges, among other things, that the Henderson Police Department lost her within the jail facility and detained her for an excessive period of time.  (Compl. at ¶ 73).

However, plaintiff has not properly alleged the second element in her complaint.  She has not alleged any specific emotional distress sufficient to survive *Twombly*.  Plaintiff alleges only that outrageous and extreme conduct "caus[ed] Plaintiffs to suffer emotional distress." (Compl. at ¶ 73). No specific facts allege that plaintiff suffered depression, anxiety, physical manifestations from severe emotional distress, or any type of specific severe or extreme emotional distress that resulted from her incident at the detention center.  *See Shoen v. Amerco, Inc.*, 111 Nev. 735, 747, 806 P.2d 469, 477 (Nev. 1995) (holding that being diagnosed as "situationally depressed" and "receiving psychiatric treatment and taking medication" could establish a genuine issue of material fact regarding severe emotional distress sufficient to survive summary judgment).  Ms. Beckwith's cause of action for IIED is dismissed against the city defendants without prejudice.

   G.   *False Imprisonment*

"A police officer is not liable for false arrest or imprisonment when he acts pursuant to a warrant that is valid on its face."  *Nelson v. City of Las Vegas*, 99 Nev. 548, 552, 665 P.2d 1141, 1143-44 (Nev. 1983).

Plaintiff has not alleged that the warrant was facially invalid.  Ms. Beckwith has not alleged that any individual Henderson police officer, including Chief Chambers, arrested her pursuant to a facially invalid warrant.  Since plaintiff has not alleged a cause of action for false imprisonment against any individual officer, she cannot allege a false imprisonment cause of action against the City of Henderson.  The cause of action for false imprisonment is dismissed.

   H.   *Respondeat Superior*

"[R]espondeat superior is not a cause of action, it is a method of imputing liability on one person (usually an employer) for the conduct of another (usually an employee)."  *Saavedra v. Las Vegas Metro. Police Dep't*, no. 2:11-cv-00613-RLH-GWF, 2012 WL 1019159, at *4 (D. Nev.

James C. Mahan
U.S. District Judge

- 9 -

March 26, 2012). The cause of action for respondeat superior is dismissed.

### I. Punitive Damages

Plaintiffs have not alleged punitive damages as a cause of action; but, rather, seeks punitive damages against the city defendants as a remedy. The city defendants argue that punitive damages are not recoverable against them.

NRS 41.035(1) states that an award for a tort against a municipality or one of its officer "may not include any amount as exemplary or punitive damages." Plaintiffs may not recover any punitive damages against the city defendants for any liability on any of the state law claims.

Similarly, the Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The Supreme Court reasoned the following:

> Regarding retribution, it remains true that an award of punitive damages against a municipality punishes only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. . . . Indeed punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknown taxpayers.

*Id.* at 267. The court finds that the city defendants are immune from any punitive damages for any liability under § 1983.

### IV. Scott Beckwith

From the court's review of the complaint, Scott Beckwith is mentioned only at the very beginning of the complaint. (*See* compl. at ¶ 4). Scott Beckwith and Dori Beckwith are both identified as "plaintiffs." However, the complaint contains no specific facts about Scott Beckwith or how he may have been harmed by any actions by the city defendants. The complaint refers to "plaintiff" and "plaintiffs" interchangeably. All causes of action alleged by Scott Beckwith against the city defendants are dismissed without prejudice.

### V. Conclusion

The following claims alleged by Dori Beckwith survive the motion to dismiss stage: (1) Fourteenth Amendment violations pursuant to § 1983 against the City of Henderson only; (2) *Monell*

**James C. Mahan**
**U.S. District Judge**

- 10 -

claims against the city of Henderson only; and, (3) negligence against the city of Henderson only. The claims against Chief Chambers are dismissed, and the court has noted the claims dismissed without prejudice. Further, plaintiffs may amend her complaint within thirty days of this order.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, DECREED that defendants', city of Henderson and Chief Chambers, motion to dismiss (doc. # 8) be, and the same hereby, is GRANTED in part and DENIED in part consistent with the foregoing.

DATED June 13, 2013.

_____
UNITED STATES DISTRICT JUDGE